479 A.2d 1069

**COMMONWEALTH of Pennsylvania**

v.

**Richard PRESSLEY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1984.

Filed Aug. 10, 1984.

Orest Kowalchuk, Philadelphia, for appellant.

Marvin D. Weintraub, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, HESTER and ROBERTS, JJ.

ROWLEY, Judge:

This is an appeal from an order of the trial court dismissing appellant's exceptions to the denial of his petition to remit support arrearages. We vacate and remand.

Appellant and his wife separated in 1970. At that time he was ordered to pay $35.00 per week for the support of his wife and two children. A final decree of divorce was subsequently entered. The parties agreed in September, 1976 to amend the support order to require appellant to pay $10.00 per week support for each child and nothing for his ex-wife. Appellant contends that he lived in the vicinity of his ex-wife and children and following the amendment of the support order he began to make support payments directly to her rather than to the Domestic Relations Section of the Family Division of the Philadelphia County Court of Common Pleas.

In September, 1977, almost a year after the support order was amended and appellant began to pay support directly to his ex-wife, she applied for public assistance. At that time, she was required to execute an assignment of her right to receive support from appellant to the Commonwealth of Pennsylvania, Department of Public Welfare. However, according to appellant, he continued to make support payments directly to his ex-wife. In June, 1981, the Department of Public Welfare (DPW) filed a petition to hold appellant in contempt for failing to make the payments ordered in September, 1976. The DPW claimed appellant owed $8,265.00 in arrearages at that time. Through counsel, appellant apparently responded by filing a cross-petition to remit arrearages. This cross-petition has not been forwarded to us with the record in this case.

On November 23, 1981, the court held a hearing that was almost entirely devoted to oral argument by counsel. At the conclusion of the hearing, the court denied appellant's motion to remit arrearages and granted that of DPW. The court concluded that, at the time of the hearing, appellant owed arrearages of $8,685.00 and ordered him to pay the arrearages at the rate of $10.00 per week until he could find employment. Also, because appellant's ex-wife is now living in Alabama, the court ordered that the duty to pay support was suspended. Exceptions were timely filed pursuant to Pa.R.C.P. No. 1910.12(e). *See also* Pa.R.C.P. No. 1910.19(b). The exceptions were denied and a final order entered on April 19, 1982. This appeal followed.

In its opinion pursuant to Pa.R.A.P.1925, the trial court stated that it felt bound by this Court's decision in *Commonwealth of Pennsylvania, Department of Public Welfare v. Alvin*, 278 Pa.Super. 64, 419 A.2d 1358 (1980). However, in that case, the ex-husband "was familiar with the required procedure" of making all support payments into court. *Id.*, 278 Pa.Super. at 66, 419 A.2d at 1359. Indeed, the only payment which the ex-husband in *Alvin* did *not* make into court was a single $1,000.00 payment for which he sought credit against the arrearages. The record in the case before us does not disclose when, if ever, appellant was informed that he was *required* to make his payments under the support order to the Domestic Relations Section.[1] Nor does it affirmatively appear that appellant was informed of the consequences of failing to make payment to the Domestic Relations Section, i.e., being forced to pay twice. *Alvin* is thus inapposite.

We also note that there is no indication in the record that appellant was notified of the assignment executed by his

---

1. The trial court stated that the "record shows that payments were made directly to the Bureau of Accounts by" appellant. The record transmitted to us fails to support this finding. The record does contain the representation of counsel for DPW that appellant paid more than $6,000.00 "through the court". However, even if this representation is correct, the mere fact that appellant deposited many of his payments into court does not show that he had been informed that use of this court-provided payment mechanism was mandatory.

ex-wife. Nor was he informed of the effect of that assignment. Thus, *Commonwealth v. Baldassari,* 279 Pa.Super. 491, 421 A.2d 306 (1980), cited to us by appellee, is also distinguishable. In that case, the ex-husband had been notified that such an assignment had taken place and of its effect. The claim there pressed was that requiring payment into court for the benefit of DPW was in some way an infringement of the husband's rights. In the instant case, appellant does not contest the propriety of the assignment. Rather, his claim is that failure to notify him of the assignment left him free to discharge his support obligation by tendering payment directly to his ex-spouse. Appellant relies upon the general rule stated in 3 P.L.E. Assignments § 32 at 179–180:

Generally, an assignment does not bind the debtor until notice is given to him; that is, until the debtor receives notice of the assignment, he may safely pay the assignor.... [¶] The assignee must give notice of the assignment to the debtor to secure to himself against intervening rights and to prevent the extinguishment of the debt by payment to the obligee or promisee ....

[¶] Between an assignee of a chose in action and the debtor, the rights of the parties are determined by the time that the debtor had notice, not by the time of the assignment. As assignee takes subject to all the defenses to which the interest was subject in the hands of the assignor, including the right of the debtor to set off any claim against the assignor [which accrued] before the notice of the assignment.

(Citations and footnotes omitted.)

■ Moreover, appellant was entitled to be sent notice of the change in beneficiary of the support order pursuant to Pa.R.C.P. No. 236. That rule states in pertinent part:

(a) The prothonotary shall immediately give written notice by ordinary mail of the entry of any order decree or judgment....

(b) The prothonotary shall note in the docket the giving of the notice....

In this case, the order of support was amended on September 7, 1977 to reflect that DPW was the beneficiary of the order of support. However, no notation was made on the docket showing that a Rule 236 notice was sent to appellant.[2] Appellee's argument that appellant received notice when the docket entry was made is therefore without merit. Under Rule 236, appellant was entitled to more than a docket entry. In the alternative, DPW was required, as assignee, to transmit to appellant "such notice as would put a reasonable man on inquiry." 2 P.L.E. Assignments § 32 at 180.

> [A] debtor is liable to the assignee if he has actual notice of the assignment or of facts which would reasonably impart knowledge of the change in the power to receive sums in satisfaction of the claim, even if the assignee has failed to give notice to the debtor.

*Id.* (Footnote omitted.)

There is no dispute that appellant knew nothing of the assignment.

■ Appellee also argues that such notice was not necessary. It argues that "under both Federal law and Pennsylvania's Procedural Support Law [sic] direct support payments to the family are prohibited, and support payments must be made to the Domestic Relations Section of the court." Brief for Appellee at 5. We disagree. The Federal statutes cited to us, 42 U.S.C.A. §§ 602(a)(26), 654(5) and 656, do not support appellee's position. Those provisions do no more than impose upon the Commonwealth of Pennsylvania the responsibility for creating and administering a system in which *it* requires that (1) A.F.D.C. recipients assign their rights to support to the State and (2) the support payments be made not "to the family" but rather "to the State". Federal law does not impose a requirement

---

2. Appellant has attached as an exhibit to his brief copies of the docket entries relevant to this case. Appellee has not challenged the accuracy of this exhibit.

*upon appellant* that he deposit support payments into court.

Furthermore, at the time that this assignment was made, 42 Pa.C.S.A. § 6706(b) provided as follows:

An order of support of any person shall be made payable to the domestic relations section for transmission directly to the public body or public or private agency, whenever the care maintenance and assistance of such person is provided for by such public body or public or private agency.[3]

The record transmitted to us in this case does not contain any of the ten orders relating to appellant's support obligation apparently issued prior to the order appealed from. One docket entry [4] contains the notation "Credit $35. paid direct. Pay ord. regularly." However, the order itself is not in the record and there is no evidence of record which explains the notation. Nor is there any evidence of record that appellant was at any time apprised of the ineffectiveness of tendering support payments directly to his wife.

While we cannot, for the reasons set forth above, affirm the order, we likewise cannot direct the trial court to enter an order favorable to appellant. There is no *evidence* of record to indicate that appellant in fact paid his wife, thus extinguishing DPW's claim. Appellant has attached to his brief a document purporting to be the affidavit of his ex-wife in which it is admitted by her that appellant made weekly $20.00 payments directly to her after September, 1976. This document was purportedly submitted to the trial court during the hearing on November 23, 1981. However, it was not made part of the record and we do not know if the document discussed at the hearing is the same as that appended to the brief.

**3.** This provision has since been amended to read:
   An order of support of any person shall direct payment to be made payable to or payment to be made to the domestic relations section for transmission [to the proper recipient].
   42 Pa.C.S.A. § 6706 (Supp.1983–84).

**4.** *See note 2, infra.*

The record includes documents from the Family Court of Jefferson County, Alabama, the new home of appellant's ex-wife. These documents constitute an attempt by her to obtain support payments pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). 42 Pa.C.S.A. § 6741 et seq.; Code of Alabama, 1975, Art. 4, §§ 30–4–80 et seq. Appellant's ex-spouse claims that she is owed $8,345.00 for the period after September, 1976. The trial court relied upon these documents in rejecting appellant's claim. We believe, however, that such reliance may be misplaced. There is some obvious overlap of her claim and DPW's claim. Moreover, the signature of appellant's ex-wife appears nearly identical on both the purported affidavit discussed above and the Alabama URESA petition. The court should reexamine these documents and more carefully explain its reliance upon one or the other of them.

■■■■ The trial court should, on remand, receive evidence on the questions of whether or not appellant was informed of the requirement that he pay into court, whether the support orders were drawn in accordance with 42 Pa.C.S.A. § 6706(b), and whether appellant actually paid his wife directly. Because the record before us is incomplete and because the trial court has not in the first instance passed upon these issues, we will not rule upon them. Should the court determine that appellant either was properly on notice that he was required to pay into court or that he in fact did not make the required payments to his wife from and after September, 1976, the court should enter an appropriate order. However, should the court determine that appellant was not properly on notice and that he did in fact pay the required amounts to his wife directly, he should receive an appropriate credit.

The order of November 23, 1981 is vacated and this case is remanded for further proceedings not inconsistent with this opinion.

Jurisdiction is not retained.