619 A.2d 394

**Ollie Jean LONG**

v.

**Benjamin THOMAS.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 2, 1992.

Decided Dec. 30, 1992.

Jacqueline M. Moran, Asst. Counsel, for appellant.

Margaret A. Diamond, for appellee.

Before a Panel of Three Judges.

PER CURIAM.

The Department of Public Welfare (DPW) appeals from an order of the Court of Common Pleas of Washington County (trial court) which granted credit against the arrearages on a child support order for a direct payment of $10,000.00 from Benjamin Thomas (Thomas) to Ollie Jean Long (Long).

Thomas and Long are the unmarried parents of five children born between 1961 and 1965. On January 11, 1965, upon receipt of a guilty plea to the charge of "willful neglect to support bastard children," the trial court ordered Thomas to pay $10.00 per month to the parole office for the support of two children.[1] He paid a total of $350.00 in child support. DPW provided cash assistance to the children until the emancipation of the youngest child in 1984.[2]

In March 1991, Benjamin Thomas received a workmen's compensation award of approximately $90,000.00. On May 17, 1991, Ollie Jean Long filed a petition for special relief seeking reimbursement for unpaid child support and to enjoin Thomas' disposition of the workmen's compensation award. By private agreement dated May 20, 1991, she withdrew her petition and waived her right to further child support arrearages in exchange for a lump sum payment of $10,000.00.[3] Neither party notified DPW or the Washington County Domestic Relations Office (DRO) of this agreement.

On June 10, 1991, the DRO filed a petition for special relief in Long's name requesting that Thomas' disposition of the workmen's compensation award be enjoined and that the trust

1. Elaine and Ruth Ann, who were born in 1963 and 1964 respectively, are specifically referenced in the support order. There is no reference to Benjamin, Shirley or Cynthia Lee, who were born in 1961, 1962, and 1965 respectively. However, the record evidences two other orders relating to the nonsupport of children docketed at 239 September 1962 and 158 September 1964.

2. There is nothing in the record which indicates when assistance payments began other than an assertion in DPW's brief before the trial court that it began in 1958.

3. Although the circumstances under which the Thomas–Long agreement was executed may support a challenge to its validity, it is of no moment here where the issue is confined to the relative rights of Thomas and DPW.

account containing the award be frozen; seeking the reimbursement of assistance payments made by DPW in the amount of $13,470.90 [4]; and asserting that Long's right to child support arrearages had been assigned to DPW by operation of law [5] and that the parties' agreement releasing Thomas from unpaid arrearages was invalid. On July 1, 1991, the trial court ordered that $15,000.00 be enjoined from disposition and frozen pending a full resolution of the matter.[6]

On January 17, 1992, the trial court decreed that DPW was the proper party; that the petition was properly filed in the name of Long as the assistance recipient; that the filing of a petition for special relief was the proper procedure; and that Long's claim was assigned by operation of law to DPW. The trial court ordered that Thomas receive a credit of $10,000.00 towards the payment of child support arrearages; that his workmen's compensation award shall not be liable for reimbursement on an assistance reimbursement claim brought by DPW [7]; that the remaining arrearages of $3,740.00 be seized from the frozen trust account and paid directly to the DRO; and that the July 1, 1991 order be vacated as to the remaining $11,530.00. DPW appeals from this order.

4.  The amount of $13,470.90 is supported in the record by a document captioned "COMPUTATION SHEET (SUPPORT)." It refers to Elaine and Ruth Ann and a claim period from November 21, 1969 through February 7, 1984. The amount of $13,470.90 is identified as "unreimbursed assistance" for this period. There is no indication that this figure represents actual support arrearages.

5.  The record contains a letter from George Kubovcik, Chief Adult Probation Officer, Domestic Relations Probation Office of Washington County, to President Judge Charles G. Sweet dated September 11, 1969, which refers to a "release" signed and a report to be made by DPW of the amount due with regard to a nonsupport order docketed at 178 November 1959. It also refers to DPW reports to be made of the amount due with regard to nonsupport of illegitimate children orders docketed at 239 September 1962 and 158 November 1964.

6.  On October 2, 1991, Thomas filed a petition to waive arrears. Disposition of this matter is not found in the record.

7.  However, as assignee to Long's support rights pursuant to Section 432.6(e) of the Public Welfare Code, DPW could sue for the balance of the support arrearages. *See Barnes v. Barnes,* 126 Pa.Commonwealth Ct. 330, 559 A.2d 980 (1989), *affirmed,* 528 Pa. 258, 597 A.2d 89 (1991).

420

The sole issue raised on appeal is whether the trial court erred in crediting Thomas' child support arrearages with his direct payment of $10,000.00 to Long.[8] Our scope of review of the decision of a court of common pleas is limited to a determination of whether the court abused its discretion or committed an error or law, or whether constitutional rights were violated. *Rohrer v. Dep't of Pub. Welfare,* 146 Pa.Commonwealth Ct. 8, 604 A.2d 746 (1991), *appeal denied,* 531 Pa. 649, 612 A.2d 986 (1992).

DPW argues that the acceptance of public assistance operates as an assignment of support rights pursuant to Section 432.6(e) of the Public Welfare Code[9], that the assignment cannot be avoided by private direct payment, and that Thomas may be compelled to pay the full amount of the child support arrearages to DPW notwithstanding the private restitution to Long.

DPW relies on *Department of Public Welfare (Martinez) v. Alvin,* 278 Pa.Superior Ct. 64, 419 A.2d 1358 (1980), for

8. Thomas argues that there was no valid assignment of support rights to DPW, that the workmen's compensation award which postdated the receipt of assistance is unavailable for reimbursement of assistance expenses, and that the true party in interest is DPW. None of these issues is properly before this Court: Thomas conceded the assignment before the trial court; the trial court resolved the issue of the availability of the workmen's compensation award for the reimbursement of assistance expenses in Thomas' favor; and Thomas waived the remaining issue because, while aggrieved by the trial court order, he did not appeal it and cannot "piggyback" this otherwise unpreserved issue on the opposing party's appeal. *See USX Corporation v. Workmen's Compensation Appeal Bd. (McDermott),* 152 Pa.Commonwealth Ct. 174, 618 A.2d 1150 (1992).

9. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. 432.6(e), which provides that

acceptance of public assistance shall operate as an assignment to the department, by operation of law, of the assistance recipient's rights to receive support, on his or her own behalf and on behalf of any family member with respect to whom the recipient is receiving public assistance. Such assignment shall be effective only up to the amount of public assistance received. The assignment shall take effect at the time that the recipient is determined to be eligible for public assistance. Upon termination of public assistance payments, the assignment of support rights shall terminate, provided that any amount of unpaid support obligations shall continue as an obligation to the department, to the extent of any unreimbursed assistance.

support. In *Alvin*, Mrs. Martinez had applied for public assistance and, as a condition of eligibility, a prior recorded support order and its arrearages were assigned to DPW and the assignment recorded in the DRO. Two years later, Mr. Alvin gave a $1,000 check marked "Alvin support" to Mrs. Martinez and then claimed credit for the same against his arrearages. The trial court ordered that the direct payment be credited and DPW appealed. On appeal, the Superior Court noted that all prior payments had been made by Alvin to the Probation Office and that he was familiar with the required procedure. The Superior Court reversed concluding that at the time of the $1,000 payment, no support was payable to Mrs. Martinez, but was due the State and that notice of the same was on record. The court characterized the payment as "subserving" and found that it did not constitute a reduction of the debt owed the State and was in conflict with applicable federal and state statutes requiring assignment.

DPW distinguishes *Commonwealth v. Pressley*, 331 Pa.Superior Ct. 43, 479 A.2d 1069 (1984). In *Pressley*, one year after the amendment of a support order the wife applied for assistance payments and was required to execute an assignment of her right to receive support to DPW. The father allegedly continued to make direct payments to his wife and DPW filed a petition to hold the appellant in contempt for failing to make the ordered payments. The father filed a cross-petition to remit the arrearages. The trial court denied the father's petition and ordered the payment of arrearages.

On appeal, the Superior Court in *Pressley* distinguished *Alvin* and found that the record in *Pressley* did not disclose if the father was informed that he was required to make payments to the DRO or of the potential consequence of a double payment if he instead made a direct payment to his wife, or if he had notice of the assignment executed by his ex-wife. While not contesting the propriety of the assignment, the father argued that the failure to notify him of it left him free to discharge his support obligation by tendering a direct payment to his ex-wife. The Superior Court held that the fact that the father had deposited payments into the court did not

show that he had been informed that use of this court-provided payment mechanism was mandatory and that he was entitled to be sent notice of the change in the beneficiary of the support order. It then vacated the trial court order and remanded the case for the receipt of further evidence on the issues of notice and whether direct payments were made to his wife, noting that a negative finding on the former and an affirmative finding on the latter would mandate an appropriate arrearages credit.

Here, unlike either *Alvin* or *Pressley,* the record establishes that the conceded assignment occurred prior to the entry of the support orders which directed Thomas to make payments to the parole office. However, unlike *Pressley,* there is no evidence or allegation that any direct payments, other than the $10,000.00 payment, were made to Long. Rather, the record establishes a single direct payment preceded by one or more payments to the parole office in compliance with the court's directive. Because of this factual alignment we find *Alvin* dispositive and, therefore, hold that the trial court erred in crediting the direct payment to the arrearages.

Accordingly, the order of the trial court is reversed.

## ORDER

AND NOW, this the 30th day of December, 1992, the order of the Court of Common Pleas of Washington County is hereby reversed.